**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **R.W., A.B.-W., W.C., C.S., D.S., and J.F.**

**No. 21-0448** (Kanawha County 19-JA-468, 19-JA-469, 19-JA-470, 19-JA-471, 19-JA-472, and 20-JA-404)

**MEMORANDUM DECISION**

Petitioner Mother E.S., by counsel Joseph A. Curia III, appeals the Circuit Court of Kanawha County's April 30, 2021, order terminating her parental rights to R.W., A.B.-W., W.C., C.S., D.S., and J.F.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Sharon K. Childers, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motions for an improvement period and post-termination visitation.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed the initial abuse and neglect petition in July of 2019, alleging that petitioner's parental rights to at least one older child were involuntarily terminated in a prior proceeding. The DHHR also alleged that petitioner's home lacked electricity. Further, the DHHR alleged that petitioner permitted the children, then between the ages of two and six years old, to remain outside unsupervised for long periods. The petition also alleged the children had attendance issues at school, arrived with soiled diapers, were behind on their vaccinations, and frequently had head lice. Finally, the DHHR alleged that petitioner would become upset when W.C., a male, was

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner does not assign as error the termination of her parental rights.

1

dressed in male clothing and that petitioner made inappropriate sexual comments to the child. At the preliminary hearing, petitioner admitted that she had recently abused methamphetamine and marijuana. Because of counsel's concerns, the circuit court found it appropriate to appoint a guardian ad litem for petitioner.[3] At this time, the court ordered petitioner to participate in a forensic parental fitness evaluation. In November of 2019, the DHHR filed an amended petition to include allegations concerning petitioner's substance abuse and ongoing mental health issues.

In December of 2019, petitioner stipulated to the allegations against her and was adjudicated as an abusive and neglectful parent. The court held petitioner's motion for an improvement period and visitation with the children in abeyance pending the completion of her forensic examination. Petitioner did not complete the evaluation until February of 2020 as a result of her failure to appear as scheduled.

Over the next several months, multiple hearings were continued as a result of ongoing attempts to obtain paternity testing, the DHHR's failure to timely file case plans, and the birth of J.F. In October of 2020, the DHHR filed another amended petition to include child J.F. in the proceedings. According to that petition, when the DHHR arrived at the hospital, a nurse stated that petitioner and her boyfriend had been in a fight, shoved one another, screamed at each other, and tried to pull the two-day-old infant away from each other. Petitioner's boyfriend was escorted from the hospital and banned from the premises. Testimony later confirmed that J.F. was born drug exposed, as he had amphetamine in his system. That same month, the court held a hearing on petitioner's improvement period and denied the same upon petitioner's lack of progress, continued poor decision making, and the results of her parental fitness evaluation and poor prognosis for improved parenting. The court also terminated petitioner's reunification services. At a preliminary hearing on the newly amended petition, petitioner moved to have her services reinstated. The circuit court denied the motion, finding that petitioner had not made sufficient progress during the proceedings.

In January of 2021, petitioner was adjudicated as an abusive and neglectful parent in regard to J.F. upon the circuit court finding that petitioner "subjected the child to domestic violence upon his birth, her failure to remedy the conditions that led to the prior involuntary termination of her parental rights, and her ongoing mental health issues." The court then set the matter for disposition as to all the children. The court also denied petitioner's renewed motion for an improvement period.

In March of 2021, the court held a dispositional hearing. In ordering that petitioner's parental rights be terminated, the court noted that petitioner continued to use methamphetamine for the first four months of the proceedings and failed to complete the parental fitness evaluation until February of 2020. Despite her initial failure to comply, the court ordered that petitioner continue to participate in services. The court noted that although petitioner completed a substance abuse program and "mostly complied" with parenting and adult life skills services, there were continued concerns about petitioner's ability to properly parent the children if returned to her care.

---

[3]Petitioner's guardian joined in the filing of the notice of appeal in this matter. In petitioner's brief, counsel indicates that he consulted with petitioner's guardian and the guardian agreed that the appeal would serve petitioner's best interests.

This included the circuit court's concern over petitioner's inappropriate paramours, one of whom is a registered sex offender. Petitioner was repeatedly told that she could not be in a relationship with this individual. Further, one potential father of A.B. was a drug addict whose parental rights to his own children were previously terminated. The court also cited the events of the altercation between petitioner and a third paramour two days after J.F.'s birth. Further, the court noted that testimony from a DHHR worker confirmed that J.F. was born with amphetamine in his system. The court stressed that the events surrounding J.F.'s birth occurred after petitioner received months of services and illustrated her inability to improve her parenting and to make decisions that are in the children's best interests. In ordering termination, the court noted petitioner's "substance abuse, . . . prior termination, . . . record of putting (inappropriate) men ahead of [her] children, untreated mental health issues, . . . personal history of domestic violence, poor parenting decision making, lack of maturity, [and] failure to acknowledge . . . problems" as a basis for its decision to terminate her parental rights. Based on the evidence, the court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that the children's best interests required termination. The court then terminated petitioner's parental rights.[4] The court also denied petitioner's request for post-termination visitation, citing the children's young ages and the length of the proceedings in finding that they either lost or never had a bond with petitioner.[5] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

---

[4]The court also terminated the parental rights of A.B.-W.'s father, and the permanency plan for that child is adoption in the current foster home. W.C.'s father successfully completed an improvement period, and the petition against him was dismissed. W.C. remains in the father's permanent custody. The parental rights of the father of C.S. and D.S. were also terminated. The permanency plan for those children is adoption. According to the guardian, the proceedings regarding the fathers of R.W. and J.F. are still ongoing.

[5]The court permitted petitioner to have visitation with W.C. at the discretion of the child's father.

On appeal, petitioner first argues that she was entitled to an improvement period. According to petitioner, she demonstrated significant improvement during the proceedings, having completed a residential substance abuse program and followed this up with additional services to address her substance abuse. Petitioner argues that she had been sober for fifteen months at the time of the dispositional hearing. This argument, however, ignores the fact that when petitioner gave birth to J.F. in October of 2020, the child tested positive for amphetamine. This was six months prior to the dispositional hearing, meaning that petitioner could not have been sober for the fifteen months leading up to disposition. The fact that the child was born drug-exposed also undercuts petitioner's argument that she should have been entitled to an improvement period because she obtained appropriate prenatal care for J.F. As such, these arguments cannot entitle petitioner to relief because they are not supported by the record.

Petitioner also argues that an improvement period was appropriate because her psychological examiner indicated that petitioner could gradually improve if she realized the extent of her problems, demonstrated prolonged abstinence from drugs, and actively participated in psychological and substance abuse treatment. Petitioner asserts that she did all of these things, while again ignoring her continued substance abuse during a time she claims to have been sober. Further, petitioner ignores the many factors upon which the evaluator based the poor prognosis for improved parenting, including petitioner's

> untreated mental health symptoms and maladaptive personality traits, her substance abuse despite being under CPS supervision, her past CPS involvement (including a prior termination of her parental rights over one child), her level of defensiveness during the testing process, and her lack of acknowledgment of some of the referral concerns.

Petitioner's reliance on the limited language from the evaluation is unpersuasive, as the evaluator included the caveat that she could possibly improve gradually, but not to such a degree that she would be able to properly parent the children. In fact, the evaluator concluded that petitioner's poor prognosis meant that it was "unlikely that CPS intervention will facilitate the reliable attainment of minimally adequate parenting within an acceptable time frame." Further, while it is true that petitioner completed substance abuse treatment and participated in treatment for depression and anxiety, she ignores the fact that the evaluator indicated that her gradual improvement would also require that she recognize the extent of her personal problems, which the record does not support.

As we have explained, a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004) (citation omitted). Contrary to petitioner's arguments, the record shows that petitioner could not satisfy this burden because she repeatedly failed to fully participate in the lengthy services offered below. Petitioner admitted to her continued abuse of methamphetamine over the course of the first several months of the proceedings, and the record shows that petitioner delayed the proceedings significantly by refusing to appear for her psychological evaluation for approximately seven months. Even more importantly, the circuit

court noted that the domestic violence incident that occurred two days after petitioner gave birth to drug exposed J.F. occurred *after* petitioner had received extensive services, thereby underscoring her inability to correct her abusive and neglectful conduct through an improvement period. Accordingly, we find no abuse of the circuit court's discretion in denying petitioner's motion. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . .").

Finally, petitioner argues that she was entitled to post-termination visitation. We have explained as follows:

> "When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). On appeal, petitioner presents no evidence to indicate that continued contact would not be detrimental to the children and would, in fact, be in their best interests. Instead, she simply asserts that the five oldest children resided with her for the entirety of their lives prior to removal. This is simply insufficient to entitle petitioner to relief. As such, we find no error in the circuit court's denial of post-termination visitation.

Lastly, we note that the proceedings regarding the other adult respondents are still ongoing. As such, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires that

> [a]t least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be

5

strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(c)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 30, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: November 8, 2021


**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton